THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TONY MCCOY,** | : | |
| **Petitioner** | : | |
| | : | **CASE NO. 3:18-CR-283** |
| **v.** | : | **(RELATED CASE NO. 3:22-CV-632)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **(JUDGE MARIANI)** |
| **Respondent** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On December 6, 2019, Tony McCoy pled guilty to conspiracy to distribute and

possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §

846.  (Docs. 37, 81-1.)  Presently before the Court is McCoy's *pro se* Motion to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody.  (Doc. 71.)  For the reasons

stated below, the Court will deny McCoy's Motion.

### II. STATEMENT OF FACTS

On August 21, 2018, a federal grand jury returned a two-count indictment against

Tony McCoy, a/k/a "Hard Times."  (PSR, Doc. 71 ¶ 1.)  The indictment charged McCoy with

one count of conspiracy to distribute and possess with intent to distribute more than one

kilogram of heroin, in violation of 21 U.S.C. § 846, and one count of possession with intent

to distribute heroin within 1,000 feet of a school, in violation of 21 U.S.C. § 860.  (*Id.*)

Pursuant to a negotiated plea agreement, on December 6, 2019, McCoy pled guilty

to a one count Superseding Information charging him with conspiracy to distribute and

possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §

846. (*Id.* ¶ 4.)  In entering such plea, McCoy admitted that he had operated a drug

trafficking organization in Monroe County, Pennsylvania between August 2016 and

February 2018, and had collected drug trafficking proceeds from "mules" he engaged to

make sales in New Jersey and Pennsylvania. (*Id.* ¶¶ 6–9, 12.)

When McCoy entered his plea, it was the Government's recommendation to the

Court that McCoy was a career offender under USSG § 4B1.1(a). (*Id.* ¶ 5.)  After the plea

hearing and before McCoy's sentencing, the Third Circuit decided *United States v. Nasir,*

982 F.3d 144, 160 (3d Cir. 2020), in which the Circuit held that McCoy's crime of conviction,

a drug trafficking conspiracy, is not a career offender predicate.[1]  As a result, McCoy was no

longer a career offender and his total offense level was reduced from thirty-one to twenty-

nine. (*See* PSR 2nd Add., Doc. 52.)  Due to his extensive criminal record, McCoy's criminal

---

[1] As another district court in this Circuit recently explained,

Following the Third Circuit's decision in 2020, the Supreme Court granted the Government's petition for writ of certiorari, vacated judgment, and remanded to the Court of Appeals for the Third Circuit so that it could consider *Greer v. United States,* 141 S. Ct. 2090 (2021), with respect to issues unrelated to the career offender enhancement. Accordingly, on remand, the Third Circuit's analysis of Nasir's career offender enhancement arguments remained the same. *Compare United States v. Nasir,* 17 F.4th 459, 468–72 (3d Cir. 2021), *with Nasir,* 982 F.3d at 156–60.

*United States v. Henderson,* No. CR 15-0329 (ES), 2022 WL 1617678, at *2 n.3 (D.N.J. May 23, 2022).

history category remained a VI. (PSR ¶ 47; PSR 2nd Add.) Accordingly, McCoy's guideline imprisonment range was 151–188 months. (PSR 2nd Add.)

McCoy's circumstances between his plea and sentencing were unusual. At the plea hearing, the late Honorable A. Richard Caputo granted McCoy's motion for furlough to attend inpatient treatment for substance abuse pending sentencing. (PSR ¶ 74.) McCoy thereafter completed approximately three months of inpatient treatment at Pyramid Healthcare in Bellville, Pennsylvania. (Id.) When he was mistakenly transferred following discharge to James A. Casey House, a halfway house, instead of being transported back to Lackawanna County Prison, Judge Caputo granted McCoy's motion to modify the furlough order to allow him to remain at the halfway house until his sentencing. (Id.; Doc. 45; Sent'g Tr., Doc. 81-2, Ex. B. ("Sent'g Tr.") at 6:7–20.)

This Court held a sentencing hearing on June 8, 2021.[2] Both Tony McCoy and his mother, Donna McCoy, testified at the hearing. They spoke about his difficult upbringing, his drug addiction, his progress during and following his inpatient treatment, and his desire to "become productive in society." (Sent'g Tr. at 8:16–13:17.) Defense counsel argued the same points, and emphasized to the Court that McCoy had "kept his word" to Judge Caputo, as demonstrated through his success in inpatient treatment despite ample opportunities to "take[] off" or "do[] something stupid." (Sent'g Tr. at 7:3–8:11.) In the sentencing memorandum filed with the Court, McCoy's counsel requested a sentence at or

---

[2] This case was reassigned to the undersigned on March 17, 2020.

3

near the mandatory minimum: five years imprisonment. (Def. Sent'g Memo., Doc. 54 at 5.)
The Government recommended a guidelines sentence of at least 151 months
imprisonment, emphasizing McCoy's extensive criminal record. (Sent'g Tr. at 13:23–19:14.)
The Court varied below the guidelines range and imposed a sentence of 132 months
imprisonment and four years of supervised release. (*See* Doc. 58.)

McCoy filed a timely notice of appeal on June 22, 2021. (Doc. 60.) The Government
filed a motion to dismiss the appeal based upon a waiver of the right to appeal contained in
the plea agreement. On July 20, 2021, the Third Circuit granted the Government's motion,
thereby enforcing the appellate waiver and summarily affirming. (Doc. 67.)

McCoy filed the instant § 2255 Motion *pro se* on April 29, 2022, and a supplement to
his Motion on June 7, 2022. (Docs. 71, 75.) The Government filed its brief in opposition on
August 29, 2022, (Doc. 81), and McCoy filed his reply on October 11, 2022 (Doc. 86). The
Motion is now ripe for disposition.

### III. STANDARD OF REVIEW

#### a. 28 U.S.C. § 2255

A federal prisoner in custody under the sentence of a federal court may, within one
year from when the judgment becomes final, move the sentencing court to "vacate, set
aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United
States." 28 U.S.C. § 2255(a). A federal prisoner may also file a § 2255 motion within one
year from "[t]he date on which the right asserted was initially recognized by the Supreme

Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). A § 2255 motion may attack a federal prisoner's sentence on any of the following grounds: (1) the judgment was rendered without jurisdiction; (2) the sentence imposed was not authorized by law or otherwise open to collateral attack; or (3) there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. 28 U.S.C. § 2255(b).

Section 2255 does not, however, afford a remedy for all errors that may have been made at trial or sentencing. *United States v. Essing*, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, § 2255 permits relief only under exceptional circumstances: for an error of law or fact constituting a "fundamental defect which inherently results in complete miscarriage of justice," *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)), or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962). If the court determines that the sentence was not authorized by law, was unconstitutional, or is otherwise open to collateral attack, the court may vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. *See* 28 U.S.C. § 2255(b).

Section 2255 also directs that, in some instances, the court "shall" hold an evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be

5

served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b).  In *United States v. Booth*, the Court of Appeals for the Third Circuit explained the court's discretion in these matters:

> Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The District court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low threshold for habeas petitioners to meet." [United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)] (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d 542, 545–46 (3d Cir. 2005).  Generally, the petitioner bears the burden of proof in § 2255 proceedings.  *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977).

### b. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are properly raised on collateral review rather than on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner must

demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective

standard of reasonableness, and (2) that counsel's deficient performance prejudiced his

client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (*citing Strickland*, 466 U.S. at

689-92).  The petitioner bears the burden of establishing that counsel's performance

prejudiced the defense.  *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002).

## IV. ANALYSIS

McCoy sets forth four somewhat overlapping grounds for relief in his § 2255 Motion.

(Doc. 71.)  Under Ground One, he asserts ineffective assistance of counsel for his

attorney's failure "to object and argue against the sentence," for his failure to "present the

[c]rucial and [i]mportant evidence at sentencing," and because his attorney "improperly

advised petitioner on several occasions that his plea of [g]uilty would result in a 5 year

mandatory minimum sentence."  (*Id.* at 5.)  Under Ground Two, McCoy argues the "District

Court failed to consider the 18 [U.S.C. §] 3553(a) factors," and asserts that Judge Caputo

"implicitly suggested and also [a]greed with Counsel, that once petitioner successfully

completed his rehabilitative programs ordered by the Court . . . [h]e would receive a 5 year

mandatory minimum sentence."  (*Id.* at 6.)

Under Grounds Three and Four, McCoy lists a number of arguments in passing,

including that McCoy's sentence violates his due process rights, based again on his

assertion that his attorney "[i]ndicated that petitioner would receive a sentence of 5 years."

(*Id.* at 8.)  He suggests there was a "serious breach in petitioners [sic] agreement [sic],

7

somewhere between the [p]lea of [g]uilty and [t]he [s]entencing . . . [w]here Mr. McCoy received a[n] unduly severely [h]arsh sentence/punishment." (*Id.* at 7–9.) Finally, he asserts that because his 132-month sentence was imposed "in the [h]eight of the Covid-19 [p]andemic, in which hundreds of prisoners died in the Federal Bureau of Prisons," his constitutional rights "to a fair and impartial sentence that should have been considerably lower than 11 years" were violated. (*Id.* at 9.)

### A. Challenge Only to Sentence

The Court notes initially that McCoy attacks only his sentence and not his guilty plea. Because the need for finality applies with "'special force with respect to convictions based on guilty pleas,'" collateral review of such convictions is available only in "strictly limited" circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Furthermore, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

As the Government notes, McCoy has not challenged the voluntariness of his plea nor suggested that he was not properly counseled. Moreover, while McCoy claims he received ineffective assistance of counsel because, he alleges, his attorney indicated that he would be sentenced to the mandatory minimum, he presents no evidence that such indications induced him to take the plea. Indeed, McCoy's own affidavit refers to no such

8

indications by his counsel prior to the entry of his guilty plea on December 6, 2019.  (*See* McCoy Aff., Doc. 71 at 15 (declaring that McCoy's counsel told him "on numerous occasions that [he] would be given a sentence of a mandatory 5 years" and providing the approximate date of only one of those occasions: "around June of 2020").)  Even discounting McCoy's counsel's own account, *see infra*, and assuming counsel stated as much, statements made six months after McCoy entered his plea plainly could not have influenced his decision to do so.  As such, the Court considers only whether an error of law or fact constituting a "fundamental defect" was made at sentencing.  *Eakman*, 378 F.3d at 298 (citing *Addonizio*, 442 U.S. at 185).

### B. Counsel Provided Effective Assistance at Sentencing

McCoy asserts he received ineffective assistance of counsel because his attorney failed "to object and argue against the sentence," failed to "present the [c]rucial and [i]mportant evidence at sentencing," and "improperly advised petitioner on several occasions that his plea of [g]uilty would result in a 5 year mandatory minimum sentence." (*Id.* at 5.)  McCoy has not shown that his attorney's performance fell below an objective standard of reasonableness, nor that it was prejudicial, and therefore his action fails on ineffective assistance of counsel grounds.

First, the sentencing hearing transcript and filings submitted on McCoy's behalf demonstrate that his counsel did not "fail to object and argue against [McCoy's] sentence." On the contrary, he zealously advocated for a reduced sentence.  In his sentencing

9

memorandum, McCoy's counsel requested a sentence at or near the mandatory minimum. (Doc. 54 at 5.)  At the sentencing hearing, his counsel presented substantial evidence of McCoy's troubled past, including that of abuse and addiction, and of his demonstrated progress, through the testimony of McCoy and his mother.  (Tr. at 8–13.)  Ultimately, this Court imposed a sentence below the guidelines, due in part to the favorable plea agreement McCoy's counsel obtained for him.  McCoy's claim that his attorney failed to argue or object on his behalf is not supported by the record.

Second, McCoy has not established that his attorney performed deficiently in failing to present certain evidence at sentencing.  McCoy asserts without explanation in his motion that his attorney "failed to present the [c]rucial and [i]mportant evidence at sentencing." (Doc. 71 at 5.)  The Court understands McCoy's reply brief to explain that the evidence he refers to is that of the Covid-19 pandemic generally.  In his reply, McCoy cites two cases in which courts granted motions for compassionate release due to the risks posed by the Covid-19 pandemic and reduced sentences accordingly under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A).  (Doc. 86 at 2 (first citing *United States v. Oruche*, 2022 U.S. Dist. Lexis 18257 (S.D.N.Y. Feb. 1, 2022); and then citing *United States v. Park*, 456 F. Supp. 3d 557, 559 (S.D.N.Y. 2020)).  Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a sentence where "(1) 'extraordinary and compelling reasons warrant such a reduction,' (2) the reduction is 'consistent with applicable policy statements issued by the Sentencing Commission,' and (3) the reduction is supported by the factors set forth in

18 U.S.C. § 3553(a)." *Park*, 456 F. Supp. 3d at 559. Liberally construing McCoy's *pro se*

filing, the Court interprets his reply brief as both (1) asserting an ineffective assistance of

counsel claim for failure to present evidence in support of compassionate release at

sentencing, and (2) purporting to move for modification of his sentence at the present time

under 18 U.S.C. § 3582(c)(1)(A) via his reply brief.

However framed, McCoy's argument fails. First, to the extent McCoy's citations to

compassionate release cases purport to challenge his sentence under the standard set forth

in § 3582, the Third Circuit has rejected such arguments, stating that § 3582 is an "improper

vehicle" to raise arguments about sentencing errors. *See United States v. Aviles*, No. 22-

2319, 2022 WL 17847191, at *2 (3d Cir. Dec. 22, 2022) (citing *United States v. Crandall*, 25

F.4th 582, 586 (8th Cir. 2022) ("[Movant] cannot avoid the restrictions of the post-conviction

relief statute by resorting to a request for compassionate release instead."))).

Nonetheless, the Court need not decide whether McCoy properly raised a § 3582

argument in his § 2255 reply brief, nor whether he has satisfied § 3582's administrative

exhaustion requirement,[3] because he has not shown entitlement to modification of his

sentence at the present time. While the Court recognizes the heightened risks posed to

certain individuals by the Covid-19 pandemic, a court "may not modify a term of

---

[3] "Before petitioning a court for relief under 18 U.S.C. § 3582(c), a defendant must first file an
administrative request for compassionate release with the warden of their facility and then either: (1) fully
exhaust BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative
request was filed with the warden." *United States v. Brown*, No. 2:16-CR-00071, 2021 WL 3485895, at *4
(W.D. Pa. Aug. 9, 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

imprisonment once it has been imposed" on such grounds without a finding that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c). McCoy has identified no evidence of extraordinary or compelling circumstances that warrant a reduced sentence.  He names no circumstances or conditions unique to his health that heighten his risk.  Instead, he states generally that his sentence should be reduced "especially when considering the unprecedented plague of Covid-19 pandemic."  (Doc. 86 at 3.)  Such broad assertions do not satisfy the compassionate release standard.  *See United States v. Raia*, 954 F.3d 954, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

For the same reasons, McCoy has not demonstrated that his counsel was ineffective for his failure to present evidence of the Covid-19 pandemic generally at sentencing.[4] Therefore, McCoy has not shown his attorney was deficient for declining to file a § 3582 motion or present such evidence at sentencing, nor that McCoy was prejudiced by that decision.  *See United States v. O'Brien*, No. 15-CR-0021, 2019 WL 11609790, at *7 (E.D. Pa. Nov. 8, 2019) ("counsel cannot be deemed ineffective for failing to raise a meritless

---

[4] Additionally, the Court notes that Section 3582(c) governs the "modification of an imposed term of imprisonment."  At the time of his sentencing, McCoy did not yet have an "imposed term of imprisonment" to be modified.  McCoy does not cite and the Court is unaware of any cases wherein a motion under this provision was granted prior to the imposition of a sentence.

claim"), *report and recommendation adopted,* No. CR 15-0021-1, 2020 WL 8024728 (E.D.

Pa. Jan. 28, 2020) (citing *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000)).

Finally, McCoy has not demonstrated that his attorney improperly assured him that

he would receive a 60-month imprisonment term, because he has shown neither that his

attorney made such assurances, nor that, if made, they would constitute ineffective

assistance.  The evidence in support of this claim consists of McCoy's own affidavit (McCoy

Aff. dated April 4, 2022, Doc. 71 at 15) and a letter he received from his trial counsel (Ltr.

from Leo Latella dated May 18, 2022, Doc. 75 ("Latella Ltr.") at 4–5).  McCoy's affidavit

states,

> 1) I affiant, was told by my attorney Mr. Leo A. Latella, on numerous occasions
> that I would be given a sentence of a mandatory 5 years.
> 2) I affiant, was told by counsel that I was doing great! [A]fter completing all the
> rehabilitation programs (in mental and drug health at Pyramid Healthcares [sic]
> Belleville Facility and the James A. Casey House for drug and [a]lcohol
> treatment), and that the Judge would give me 5 yrs. at sentencing. After
> Counsel submitts [sic] all evidence needed for a lesser sentence. The Judge
> specifically stated:
>> "You can present anything to me by way of witness, Affidavit,
>> letter, anything you can think of that will assist me in arriving at
>> an appropriate sentence" (Exhibit # 3. at page 17).
> 3) I affiant was told again around June of 2020, when counsel Latella visited
> the halfway house, that I would receive a 5 yr. sentence. "starting at a lower
> base offense" (see Court statement at Plea Hearing Exhibit #3 pg.19), and I
> was told again downtown when Mr. Latella seen [sic] me and he was with his
> collegues [sic] by [W]ilkes-[B]arre. Right before I self-surrendered for
> sentencing after being on [f]urlough for almost 18 months. That I would receive
> a 5 year sentence. Only to in reality to be misled by counseled [sic] and receive
> an 11 yrs. sentence. Which Counsels [sic] failure to object and present
> evidence for a lesser sentence should be considered Ineffective Assistance of
> Counsel.

(McCoy Aff.)  However, McCoy's attorney's letter does not corroborate McCoy's account.

McCoy's attorney writes, in relevant part,

> I have no problem at all stating that I has [sic] repeatedly told you we would
> argue as strongly as possible for and request the minimum sentence possible
> in your case.  When you plead guilty before Judge Caputo, he gave you a very
> rare and unique opportunity to go to rehab.  I have never seen someone who
> has plead guilty to a serious drug felony receive such an opportunity.  I told you
> that this was also an opportunity for you to prove to Judge Caputo that you
> were serious about your recovery and that you had reformed and could be
> trusted. . . . At every step of the process I told you that all of this would help you
> at sentencing and that we would argue for and request the minimum sentence.
> . . . When your case was reassigned to Judge Mariani, I told you that we would
> make the same arguments to him and fight for and request the minimum. . . .
> Personally, I wish you would have received time-served even though there was
> a mandatory as I personally believe jail serves no purpose in your case.

(Latella Ltr.)  Following receipt of his attorney's letter, McCoy drafted and mailed him an

affidavit for signature.  The draft affidavit, which states, among other things, that McCoy's

attorney told him "on several occasions" that "the Court would likely sentence him to his

mandatory minimum of 5 years," was apparently never signed by his attorney.  (*See* Doc.

75 at 7.)

Accordingly, the evidence shows that McCoy's counsel told him he would argue for

and request the minimum sentence possible, but not that his counsel in any sense

guaranteed such a result.  In any event, the Third Circuit has "long held that an erroneous

sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an

adequate plea hearing was conducted."  *United States v. Shedrick*, 493 F.3d 292, 299 (3d

Cir. 2007) (collecting cases).  This is because "[t]he law does not require that a defendant

14

be given a reasonably accurate 'best guess' as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior." *Id.* (quoting *United States v. Mustafa*, 238 F.3d 485, 492 n.5 (3d Cir. 2001)).

As in *Shedrick*, here, an adequate plea hearing was conducted, thereby precluding any relief based on the claim that McCoy's counsel erroneously predicted his sentence. McCoy was advised in open court of the nature of his plea agreement and the Court's right to impose a "more severe" sentence:

> **JUDGE CAPUTO:** Now, did you have an opportunity to read and discuss the plea agreement with Mr. Latella before you signed it?
>
> **MCCOY:** Yes, I did, Your Honor.
>
> **JUDGE CAPUTO:** Does the plea agreement contain the complete understanding between and the government?
>
> **MCCOY:** Yes.
>
> **JUDGE CAPUTO:** And do you understand the terms of the plea agreement?
>
> **MCCOY:** Yes.
>
> **JUDGE CAPUTO:** Has anybody made any other or different promise to you of any kind in an effort to get you to plead guilty in this case?
>
> **MCCOY:** No.
>
> **JUDGE CAPUTO:** *You do understand that the plea agreement simply has recommendations to me, I can reject those recommendations without allowing you to withdraw your guilty plea, and I can impose a sentence that may be more severe than one you expect?*
>
> **MCCOY:** *Yes, I understand.*

(Plea Hr'g Tr., Doc. 81-1, Ex. A at 6:2-17 (emphasis added).)  Further, the Court advised

McCoy of the maximum penalty for the crime to which he was pleading guilty:

> **JUDGE CAPUTO:** Now, I am obliged to tell you that the maximum penalty for
> the charge of conspiracy and possess with intent to distribute 100 grams or
> more of heroin is 40 years in prison with a mandatory minimum of five years, a
> minimum of four years, up to life of supervised release, a $5 million fine, and a
> $100 special assessment. Do you understand that?
>
> **MCCOY:** Yes, I do.

(*Id.* at 7:9–15.)  McCoy confirmed he understood in both instances.  As such, even if the

evidence indicated that McCoy's attorney had advised conclusively that he would receive

the minimum sentence, McCoy would not be entitled to relief as a matter of law, because

"the written plea agreement and in-court guilty plea colloquy clearly establish the

defendant's maximum exposure and the sentencing court's discretion." *Shedrick*, 493 F.3d

at 299.  Accordingly, McCoy has failed to rebut the presumption that his attorney's

performance fell within the "wide range of professionally competent assistance." *Strickland*,

466 U.S. at 690.

### C. Court Considered Section 3553(a) Factors

McCoy also requests relief on the grounds that the Court "failed to consider the 18

[U.S.C. §] 3553(a) factors" (Doc. 71 at 6), which a court is required to consider "in

determining the particular sentence to be imposed."  18 U.S.C. § 3553(a).  McCoy's

argument fails in light of the transcript of the sentencing hearing.  As reflected on pages 19

through 26 of the transcript, the Court expressly considered the § 3553(a) factors, stating

initially,

> **THE COURT:** Thank you, Mr. Camoni. It's my obligation, now, to apply the
> factors of Section 3553(a) to determine what the appropriate punishment is. In
> doing that, there are a number of factors I need to take into consideration, many
> of which have been referred to by counsel.
>
> I do consider and must consider the nature and circumstances of the
> offense, and I must consider the particular history and characteristics of this
> Defendant.
>
> And then the sentence I impose has to reflect the seriousness of the
> offense, it has to promote respect for the law, and it has to provide just
> punishment. It must also afford adequate deterrence to criminal conduct,
> generally, and it must protect the public from further crimes of the Defendant.
>
> In addition, the sentence has to provide the Defendant with any needed
> educational or vocational training or medical care or other correctional
> treatment in the most effective manner.
>
> It also requires that I consider the guidelines about which we have just
> spent some time discussing their application, and it requires that the sentence
> I impose be, as Mr. Camoni has correctly pointed out, sufficient but not greater
> than necessary to satisfy the sentencing objectives of Section 3553(a), which I
> have just identified, including the others that I have not mentioned, but I have
> mentioned the principal factors, but I have taken them all into consideration.

(Sent'g Tr. at 19:15–20:14.)

Then, the Court continued to consider each of those factors. The Court discussed

McCoy's childhood abuse, his use of drugs from a young age and his resulting addiction, his

struggles with mental health, and his recent experience in in-patient treatment. (*Id.* at

20:15–21:25, 25:2–8.) The Court considered McCoy's extensive criminal record, including

fourteen prior adult convictions, and the nature of those convictions. (*Id.* at 22:1–20.) Next,

the Court considered the circumstances of the offense at issue. And while noting that

McCoy's addiction is a mitigating factor, the Court also concluded that his conduct,

17

specifically his use of "other heroin addicts as mules to distribute drugs for him," as well as the "substantial volume" of the drugs, went "beyond [his] addiction." (*Id.* at 23:1–12.)

The record reflects the Court's express and thorough consideration of the § 3553(a) factors, and accordingly, McCoy is not entitled to relief on this basis.

### D. Sentence Did Not Violate Due Process Rights Nor Breach Plea Agreement

Under Grounds Three and Four, McCoy lists several purported bases for relief. First, he asserts that the sentence imposed violates his due process rights. He does not explain how the sentence does so. Instead, he repeats previous arguments, alleging again that his counsel indicated he would receive a sentence of five years, and adding that Judge Caputo made "implicit indications" as to the same. (Doc. 71 at 6–7.) He argues that because he completed inpatient treatment and did not abscond despite opportunities to do so, "[i]t was a violation of [d]ue [p]rocess of [l]aw, not to give petitioner a much lesser sentencing variance than 11 years." (*Id.* at 7.) He also asserts that he "received a [sic] unduly severely [h]arsh sentence/punishment." (*Id.* at 8.)

Even liberally construing McCoy's *pro se* motion to assert both procedural and substantive due process claims, the Court is aware of no basis on which to conclude that McCoy's due process rights were violated. Procedural due process requires that individuals receive "the opportunity to be heard at a meaningful time and in a meaningful manner" when they are impacted by government action. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Importantly, McCoy was afforded the opportunity to address

18

the Court at his sentencing, as was his mother. He has identified no procedural safeguards that he was not but should have been afforded at his sentencing, and the Court will not speculate as to what violations he purports to allege. *See United States v. Thomas*, 221 F.3d 430, 433 (3d Cir. 2000) ("Indeed, we have previously held that vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (citing *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988)).

To the extent McCoy argues the length of his sentence was excessive so as to offend substantive due process, that argument fails; his sentence *varies below* the sentencing guidelines, and, in any event, "the claim of an excessive sentence when the sentence imposed is within the statutory maximum is not a ground for relief under [§] 2255." *Flanagan v. United States*, No. 4:13-CV-2090-RWS, 2014 WL 1315230, at \*7 (E.D. Mo. Mar. 28, 2014) (citing *Houser v. United States,* 508 F.2d 509, 516 (8th Cir. 1974)).

Finally, the Court addresses McCoy's contention that "there was a serious breach in petitioners['] argeement [sic], somewhere between the [p]lea of [g]uilty and [t]he [s]entencing." (Doc. 71 at 8.) He does not specify which provision may have been breached. Understanding McCoy to assert that his guilty plea provided he would be sentenced to the mandatory minimum of sixty months, and that he was therefore sentenced in breach of the agreement, this claim is meritless.

While claims relating to breaches of plea agreements are properly brought in a § 2255 motion, *see Nichols v. United States*, 474 F. App'x 854, 855 (3d Cir. 2012), McCoy

19

alleges no evidence of the Government's breach and instead seems to contend the *Court* breached the agreement.  But the Court was not a party to the agreement.  The guilty plea itself (Doc. 37) unequivocally denounces the making of any guarantee as to the sentence the Court would ultimately impose.  Under the bold heading "Court Not Bound by Plea Agreement," the agreement states,

> The defendant understands that the court is not a party to and is not bound by this Agreement, or any recommendations made by the parties. Thus, the court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 40 years, a fine of $5,000,000, a maximum term of supervised release of up to life, which shall be served at the conclusion of and in addition to any term of imprisonment, the costs of prosecution, denial of certain federal benefits, and assessments totaling $100.

(*Id.* at 16–17.)  Accordingly, this claim fails.

Because McCoy nevertheless asserts that Judge Caputo improperly implied he would receive the minimum sentence, the Court notes this assertion is not supported by the record.  McCoy references "implicit indications" made by Judge Caputo that he would impose a sentence of five years, but such indications are absent from the plea hearing transcript.  As set forth *supra* at 13–14, Judge Caputo reiterated to McCoy that the plea agreement "simply has recommendations" and did not prevent him from imposing a more severe sentence.

To the extent McCoy argues that he was conditionally guaranteed a five-year sentence if he successfully completed inpatient treatment, that argument is without support.

After granting McCoy's motion for furlough pending sentencing, Judge Caputo had the

following exchange with McCoy:

> **JUDGE CAPUTO:** You know that it's something that's good for you and if you
> mess it up, it's bad for you.
>
> **MCCOY:** Yes.
>
> **JUDGE CAPUTO:** It's as simple as that.
>
> **MCCOY:** Yes.
>
> **JUDGE CAPUTO:** Real bad.
>
> **MCCOY:** Yes.
>
> **JUDGE CAPUTO:** So good luck to you to doing it. I hope it works.
>
> **MCCOY:** Thank you, Your Honor.

(Plea Hr'g Tr. at 20:4–13.)  Judge Caputo promised nothing in exchange for McCoy's

success; he merely wished McCoy luck.  As such, any assertion that McCoy was sentenced

in violation of his plea agreement, or that the Court otherwise guaranteed and subsequently

declined to impose a lower sentence, is without merit.

## V. EVIDENTIARY HEARING

Section 2255(b) advises that "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

thereof to be served upon the United States Attorney, grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto."

28 U.S.C. § 2255(b).  "The decision to hold a hearing is wholly within the discretion of the

district court." *Eckenberger v. United States*, 2022 WL 609208, at \*5 (M.D. Pa. March 1, 2022) (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).  In this case, no evidentiary hearing is necessary because "the motion and files and records of this case show conclusively that the movant is not entitled to relief." *Eckenberger*, 2022 WL 609208, at \*5 (M.D. Pa. March 1, 2022) (internal quotations and citations omitted)).

## VI. CERTIFICATE OF APPEALABILITY

"A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability ["COA"]." *United States v. Bristol*, 2022 WL 2068048, at \*8 (E.D.Pa. June 8, 2022) (citing 28 U.S.C. § 2253(c)(1)).  The petitioner must make a "substantial showing of the denial of a constitutional right" for the district court to issue a COA, which requires a showing that "reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In this case, a COA is not warranted for McCoy's claims because the Court finds that reasonable jurists would not find this Court's resolution of McCoy's constitutional claims debatable or wrong.

## VII. CONCLUSION

For the aforementioned reasons, the Court will deny McCoy's *pro se* Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 71).  A separate Order will follow.

22

Robert D. Mariani
United States District Judge